Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000507
29-MAY-2015
08:48 AM

NO. CAAP-12-0000507

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JOSE M. ROJAS REYES, Plaintiff-Appellant, v. HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR HOME EQUITY LOAN TRUST SERIES ACE 2006-HE1, a Delaware Corporation, SGGH LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, a Delaware Corporation; CHRISTIE ANN RAMIREZ, Defendants-Appellees, and DOES 1-30, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-0536)


SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Leonard, JJ.)

Plaintiff-Appellant Jose M. Rojas Reyes (Reyes) appeals from the following judgments and orders entered by the Circuit Court of the First Circuit (Circuit Court)[1]:

(1) "Order Denying Plaintiff [Reyes's] Motion to Set Aside the Court's (1) Order Granting Defendants HSBC Bank USA, [National Association,] as Trustee for Home Equity Loan Trust Series ACE-2006-HE1 [(HSBC)] and Mortgage Electronic Registration Systems, Inc.'s [(MERS)] Motion for Summary Judgment, and (2) Final Judgment as to All Claims Against Defendants [HSBC and MERS]" filed May 1, 2012 (collectively the Order Denying Motion to Set Aside);

_____

[1] The Honorable Judge Edwin C. Nacino presided.

(2) "Order Denying Plaintiff [Reyes's] Motion to Reconsider the Court's (1) Order Granting Defendant Fremont Reorganizing Corporation's [(Fremont[2])] Motion for Summary Judgment, and (2) Judgment as to All Claims Against Defendant [Fremont]," filed April 26, 2012 (collectively the Order Denying Motion to Reconsider);

(3) "Order Granting Defendant [Fremont's] Motion for Summary Judgment Filed January 13, 2012," filed March 1, 2012 (the Order Granting Fremont MSJ);

(4) "Order Granting Defendant [Fremont's] Motion for Rule 54(b) Certification Filed March 9, 2012," filed April 26, 2012;[3] and

(5) "Final Judgment as to All Claims Against Defendant [Fremont]," filed April 26, 2012 (the Fremont Judgment).

Reyes raises the following points of error:

(A)   The Circuit Court erred in entering the Order Denying  Motion to Set Aside because newly discovered evidence obtained by Reyes would have changed the outcome of HSBC's motion for summary judgment.

(B)   The Circuit Court committed "a grave and manifest error of law" by granting Fremont's motion for summary judgment because there were "numerous issues of material fact" regarding "kick back payments" made to Reyes's mortgage broker[4] and the

---

[2]     By order of this court entered on July 11, 2014, SGGH LLC, a Delaware limited liability company, was allowed, without objection, to substitute as a party for Fremont.

[3]     Reyes fails to present any discernable argument regarding his challenge to this order.  Therefore, we deem this challenge waived.  Hawaii Rules of Appellate Procedure (HRAP) Rule 28(b)(4) and (6).

[4]     As alleged in the "First Amended Complaint for Declaratory Judgment as to Ownership of Title to the Real Property Located at 648 Kaakolu Street, Lahaina, Hawaii 96761 and For Injunctive Relief and Actual, Treble and Punitive Damages," (FAC), Christie Ann Ramirez "served as the licensed mortgage solicitor on behalf of Charter Funding/First Magnus involved in the underlying mortgage loan transaction."  It does not appear from the record that Ms. Ramirez was served with the FAC.  First Magnus Financial Corporation, an Arizona Corporation doing business in the State of Hawaiʻi as Charter Funding (Magnus), designated as a "Nominal Defendant," was served, in Arizona.

In his February 7, 2012 memorandum in opposition to Fremont's motion for summary judgment, Reyes claimed that Magnus has "since gone into bankruptcy and, despite [Reyes's] best efforts, Mrs. Ramirez cannot be located."  Ms. Ramirez, hereinafter referred to as "Broker," and her employer,

(continued...)

underwriting procedure used by Fremont as well as "unsettled questions of law" regarding breach of a mortgage broker's fiduciary duty and the bank inducing the breach.

(C)  Abuse of discretion by the Circuit Court when it denied Reyes's motion to reconsider summary judgment awarded to Fremont where there were genuine issues of fact.

After a careful review of the issues raised and the arguments made by the parties, the applicable authority, and the record, we resolve Reyes's points on appeal as follows and affirm.

(A)  The Circuit Court did not abuse its discretion when it denied Reyes's March 16, 2012 non-hearing motion to set aside the October 18, 2011 order granting HSBC and MERS's motion for summary judgment and December 6, 2011 final judgment entered in HSBC and MERS's favor on all claims against them (Motion to Set Aside).[5]  In his Motion to Set Aside, Reyes relied on Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b)(2) and (6) and alleged as its basis, "surprise, newly discovered evidence, fraud, and the additional reasons set forth in the attached" memorandum, affidavit and exhibits.  However, in his memorandum in support, his argument focused only on the newly discovered evidence ground.[6]  "Much discretion is afforded to a trial court in deciding whether to set aside a judgment under HRCP Rule 60(b)." Keahole Def. Coal., Inc. v. Bd. of Land & Natural Res., 110 Hawai'i 419, 436, 134 P.3d 585, 602 (2006).

While far from clear, the newly discovered evidence upon which Reyes relies is apparently not composed of the documents supporting a catering business or bank statements for a "Jose H. Rojas Reyes" that Reyes does not dispute were provided to him before the hearing on HSBC's motion for summary judgment,

---

[4](...continued)
Magnus, were voluntarily dismissed as parties without prejudice on April 5, 2012.

[5]     We note that Reyes does not appeal from the underlying December 6, 2011 judgment entered in favor of HSBC and MERS.

[6]     To be sure, Reyes argued many things in his memorandum in support, including that the non-judicial sale of the subject property was void because it was not conducted in compliance with statute, but he did not couch these arguments in terms of HRCP Rule 60(b)(6).

but rather, the significance of these documents that he received from HSBC in discovery, i.e., that they were, according to Reyes, "false" and were submitted to Fremont by Broker and relied upon by Fremont in deciding to make the loan to Reyes.

Reyes cites no authority for the proposition that realization of the significance of previously obtained evidence qualifies as "newly discovered evidence" under HRCP Rule 60(b) and we find none. Evidence is not considered newly discovered if it is in the moving party's possession at the time of trial or hearing on the motion. Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 211-12 (9th Cir. 1987) (interpreting Federal Rules of Civil Procedure Rule 60(b)). Once the evidence is in the moving party's possession, the onus is upon him or her to exercise due diligence in examining and analyzing the significance of that evidence. Id. ("This fact of possession also makes clear that Coastal did not use due diligence to discover its expert's error. The fact that Walters analyzed data from the wrong year should have been apparent to anyone familiar with the date of Coastal's termination by Toyota.")

We cannot conclude that the Circuit Court abused its discretion in denying Reyes's Motion to Set Aside.

(B) The Circuit Court did not err in granting Fremont's motion for summary judgment. The Circuit Court granted summary judgment to Fremont as to Counts Two, Three, and Six of the FAC. We review the Circuit Court's grant of summary judgment de novo. Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005). Accordingly,

> [o]n appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

Iddings v. Mee-Lee, 82 Hawai'i 1, 5, 919 P.2d 263, 267 (1996). See also HRCP Rule 56(c).[7]

In deciding a motion for summary judgment, "[a] fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." Crichfield v. Grand Wailea Co., 93 Hawai'i 477, 482-83, 6 P.3d 349, 354-55 (2000) (quoting Hulsman v. Hemmeter Dev. Corp., 65 Haw. 58, 61, 647 P.2d 713, 716 (1982)) (internal quotation marks omitted). "[A] 'genuine issue as to any material fact' . . . as to a particular matter must be of such a nature that it would affect the result." Richards v. Midkiff, 48 Haw. 32, 39, 396 P.2d 49, 54 (1964).

In reviewing a circuit court's grant or denial of a motion for summary judgment, the appellate court "must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." Crichfield, 93 Hawai'i at 483, 6 P.3d at 355 (citation, internal quotation marks, and brackets omitted). "[A]ny doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party." GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995).

(1) Summary judgment was properly granted with regard to Count Two. Count Two, a request for declaratory judgment, rescission and common law damages, vaguely asserted[8] that the "Notes and Mortgages and as may have been assigned are void and unenforceable as procured by deceit and misrepresentation." In the only two statements of fact arguably

---

[7]     HRCP Rule 56(c) provides, in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

[8]     Fremont did not move to dismiss the FAC.

relevant to Fremont's participation in the making of the loan, Reyes alleged,

> 16. Upon information and belief, material information on Reyes'[s] loan application and/or information submitted to the lender's underwriters, including the amount of Reyes'[s] gross monthly income, was falsified by Fremont, [Magnus], and [Broker], for the purpose of qualifying Reyes for a loan he could never afford, so that [Magnus] and [Broker] could earn a large commission and so that Fremont could sell the loans for profit on the secondary mortgage market.
>
> 17. Upon closing the transaction, [Magnus] and [Broker] received a large commission for their involvement.

"A claim for fraud involves 'a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment.' Fisher v. Grove Farm Co., Inc., 123 Hawai'i 82, 116, 230 P.3d 382, 416 (2009)." Seki ex rel. Louie v. Hawaii Gov't Employees Ass'n, AFSCME Local No. 152, AFL-CIO, 133 Hawai'i 385, 407 n.33, 328 P.3d 394, 416 n.33 (2014). "The elements of fraud are: (1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance." Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 122 Hawai'i 461, 482-83, 228 P.3d 341, 362-63 (App. 2010). However, Reyes points to no evidence in the record supporting the allegation that Fremont falsified material information on the subject loan application. Normally, "the statements contained in a [loan application] are the applicant's own statements regarding his income." Infante v. Bank of Am. Corp., 680 F. Supp. 2d 1298, 1304 (S.D.Fla. 2009) (citation and internal quotation marks omitted). "Such statements are representations by the applican--i.e., the plaintiff--not by a lender, and thus cannot be the basis of a fraud claim by a plaintiff against that lender." Long v. Deutsche Bank Nat'l Trust Co., 2011 WL 5079586 at *8 n.6 (D. Hawai'i Oct. 24, 2011); see also Menashe v. Bank of New York, 850 F. Supp. 2d 1120, 1141 (D. Hawai'i 2012) quoting Long, id.

Reyes argued in opposition to Fremont's motion for summary judgment that,

> [t]he factual allegations [in support of the fraud claim] include that [Reyes's] monthly income as misstated by the mortgage broker on his loan application and that false information was submitted to Fremont. This allegation states a cause of action for fraud committed by the mortgage broker sufficient enough to invalidate the mortgage loans. Defendant Fremont is liable for this fraud, as it induced the mortgage broker's actions by offering a large payment in exchange for ensuring [Reyes] was put into these loans.

Reyes did not allege in the FAC a claim that Fremont was responsible for the actions of Broker. For this reason alone, we could affirm the Circuit Court's grant of summary judgment. Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) ("where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court").

Even if we were to overlook this failure of pleading, Reyes approached, and presumably engaged, Magnus to act as his broker in this transaction. "In general, a lender is not liable for the actions of a mortgage broker unless there [sic] 'there is an agency relationship between the lender and the broker.'" Menashe, 850 F. Supp. 2d at 1135 quoting Gonzalez v. First Franklin Loan Servs., 2010 WL 144862, at *13 (E.D.Cal. Jan. 11, 2010). To hold Fremont responsible for Broker's acts, it was incumbent on Reyes to present evidence that Fremont granted Magnus/Broker actual or apparent authority. U.S. Bank Nat'l Assn. v. Salvacion, 134 Hawai'i 170, 173, 338 P.3d 1185, 1188 (App. 2014). Reyes points to no such evidence in the record.

In opposition to Fremont's motion for summary judgment, Reyes argued for the first time that, by offering Broker a "Yield Spread Premium," (YSP)[9]

---

[9]

> A yield spread premium is calculated based upon the difference between the interest rate at which the broker originates the loan and the par, or market, rate offered by a lender. The Department [of Housing and Urban Development] believes, and industry and consumers agree, that a yield spread premium can be a useful means to pay some or all of a borrower's settlement costs. In these cases, lender payments reduce the up front cash requirements to borrowers. In some
> (continued...)

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

> Fremont clearly should have known that the promise of such a lucrative payment would induce the mortgage broker to breach its fiduciary duty to the Plaintiff.
>
> This type of inducement by Fremont also created an impermissible "dual agency" in which the mortgage broker was acting as an agent of not only the Plaintiff, but also of Defendant Fremont.

However, the exhibit Reyes presented to the Circuit Court shows that it was the Broker that asked for the YSP, not Fremont who offered it to the Broker to close the transaction. Furthermore, the YSP may have been permissible as Reyes points to no evidence that the YSP was not for goods or services actually provided and were not reasonably related to the value of those goods or services. 12 USC § 2607, supra.

---

[9](...continued)
> cases, borrowers are able to obtain loans without paying any up front cash for the services required in connection with the origination of the loan. Instead, the fees for these services are financed through a higher interest rate on the loan. The yield spread premium thus can be a legitimate tool to assist the borrower. The availability of this option fosters homeownership.
>
> . . . .
>
> HUD also recognizes, however, that in some cases less scrupulous brokers and lenders take advantage of the complexity of the settlement transaction and use yield spread premiums as a way to enhance the profitability of mortgage transactions without offering the borrower lower up front fees. In these cases, yield spread premiums serve to increase the borrower's interest rate and the broker's overall compensation, without lowering up front cash requirements for the borrower. As set forth in this Statement of Policy, such uses of yield spread premiums may result in total compensation in excess of what is reasonably related to the total value of the origination services provided by the broker, and fail to comply with the second part of HUD's two-part test as enunciated in the 1999 Statement of Policy, and with Section 8.
>
> . . . .
>
> In determining whether a payment from a lender to a mortgage broker is permissible under Section 8 of [Real Estate Settlement Procedures Act (RESPA)], the first question is whether goods or facilities were actually furnished or services were actually performed for the compensation paid. The fact that goods or facilities have been actually furnished or that services have been actually performed by the mortgage broker does not by itself make the payment legal. The second question is whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

Real Estate Settlement Procedures Act Statement of Policy 2001-1 Regarding Lender Payments to Mortgage Brokers, 66 Fed. Reg. 53,052, 53,054 (2001).

The Circuit Court was correct in granting summary judgment as to Count Two.

(2)    The Circuit Court was correct in entering summary judgment as to Count Three, alleging a violation of HRS Chapter 480 (UDAP).

> Hawaiʻi law indicates that a mortgage loan transaction "falls within the ambit of HRS [Chapter] 480[.]" Hawaii Cmty. Fed. Credit Union v. Keka, 94 Hawaiʻi 213, 227, 11 P.3d 1, 15 (2000) (citing Cieri v. Leticia Query Realty, Inc., 80 Hawaiʻi 54, 905 P.2d 29 (1995)). HRS § 480-2 states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Under Hawaiʻi law, "[a] deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." Courbat v. Dahana Ranch, Inc., 111 Hawaiʻi 254, 262, 141 P.3d 427, 435 (2006) (citation, internal quotation marks and brackets omitted).

Salvacion, 134 Hawaiʻi at 173-74, 338 P.3d at 1188-89.

Count Three of the FAC vaguely asserted that "the acts complained of above constitut[ed] unfair and deceptive acts and practices against consumers, as defined and proscribed in Chapter 480" of HRS.  In opposition to summary judgment, Reyes ultimately asserted that the Notes and Mortgages were void (1) as products of deceit under HRS § 480-12 (2008); and (2) as substantively unfair under HRS § 480-2 (2008).

As stated, both of Reyes's asserted UDAP claims are time-barred under HRS § 480-24 (2008).  HRS § 480-24 provides that "[a]ny action to enforce a cause of action arising under this Chapter [UDAP] shall be barred unless commenced within four years after the cause of action accrues[.]"  HRS § 480-24(a) (emphasis added).[10]  As Hawaiʻi federal courts have held, a cause of action for unlawful business practices accrues upon occurrence of alleged violation, rather than when plaintiff discovers the violation.  See McDevitt v. Guenther, 522 F. Supp. 2d 1272, 1289 (D. Hawaiʻi 2007).  Therefore, Reyes's asserted cause of action accrued on November 16, 2005, when Reyes signed the loan documents.  Swartz v. City Mortg. Inc., 911 F. Supp. 2d 916, 941-

---

[10]    "This chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes, except that lawsuits by indirect purchasers may be brought as provided in this chapter." HRS § 480-3 (2008).

42 (D. Hawai'i 2012), abrogated on other grounds by Compton v. Countrywide Fin. Corp., 761 F.3d 1046 (2014). On March 15, 2010, Reyes filed his original complaint, initiating the instant action. Therefore, Reyes's lawsuit was filed more than four years after he signed the allegedly fraudulent loan application and so is time-barred by HRS § 480-24.

Reyes argues that HRS § 480-24 is inapplicable because (1) his claim for declaratory judgment was brought under HRS Chapter 632, not HRS § 480-13; and (2) there is no cause of action per se because HRS § 480-12 operates to void the contract as a matter of law. Reyes's arguments are without merit.

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

Courbat v. Dahana Ranch, Inc., 111 Hawai'i 254, 260, 141 P.3d 427, 433 (2006) (quoting Gray v. Admin. Dir. of the Courts, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997)). The plain language of HRS § 480-24 applies it to "[a]ny action to enforce a cause of action arising under this chapter[.]" HRS § 480-24. Reyes seeks "to enforce a cause of action" that arises under HRS § 480-12. Reyes brought "any action" in the form of an action for declaratory relief, rescission, and treble damages. Therefore, HRS § 480-24 applies.

Reyes argues that, even if the time bar under HRS § 480-24 applies to his UDAP claims, that "statute should have been tolled because the unfair scheme was fraudulently concealed from Reyes." This is essentially an argument for equitable tolling.

"'Equitable tolling' is defined as '[t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired.'" Narmore v. Kawafuchi, 112 Hawai'i 69, 75 n.15, 143 P.3d 1271, 1277 n.15 (2006) (quoting Black's Law Dictionary 579 (8th ed. 2004)) superseded by statute on other grounds, HRS §§ 232-16, 17 (Supp. 2014).

> In order to toll a statute of limitations for a complaint filed after its expiration, a plaintiff must demonstrate "(1) that he . . . has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way." Felter v. Norton, 212 F. Supp. 2d 118, 126 (D.D.C. 2006) (citing Pace v. DiGuglielmo, 544 U.S. 408, 417, 125 S.Ct. 1807, 1814, 161 L.Ed. 2d 669 (2005); Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003)). Extraordinary circumstances are circumstances that are beyond the control of the complainant and make it impossible to file a complaint within the statute of limitations. Id. (citing United States v. Cicero, 214 F.3d 199, 203 (D.C.Cir. 2000)).

Office of Hawaiian Affairs v. State, 110 Hawai'i 338, 360, 133 P.3d 767, 789 (2006).

Equitable tolling has been applied to circumstances closely resembling the instant case. In Rundgren v. Bank of New York Mellon, 777 F. Supp. 2d 1224, 1230 (D. Hawai'i 2011), the mortgagor filed a state court suit against lenders, seeking damages and rescission of mortgage loans based on alleged unfair and deceptive trade practices in violation of Hawai'i law, and alleging wrongful foreclosure. The court held that federal equitable tolling principles applied to claims under HRS § 480-12 if based on fraudulent concealment:

> To avoid the bar of limitation by invoking the concept of fraudulent concealment, the plaintiff must allege facts showing affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief. Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure. A plaintiff must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts.

Rundgren, 777 F. Supp. 2d at 1230 (emphasis added, citation and internal quotation marks omitted, format altered). Thus, to toll the statute of limitations for a UDAP claim, equitable tolling based on fraudulent concealment may be available.

However, we need not decide whether equitable tolling applies to UDAP claims because Reyes did not plead concealment by Fremont with particularity. In Reyes's FAC, he included a single statement of fact describing the information in and in support of the loan application:

16. Upon information and belief, material information on Reyes'[s] loan application and/or information submitted to the lender's underwriters, including the amount of Reyes'[s] gross monthly income, was falsified by Fremont, [Magnus], and [Broker], for the purpose of qualifying Reyes for a loan he could never afford, so that [Magnus] and [Broker] could earn a large commission and so that Fremont could sell the loans for profit on the secondary mortgage market.

The statement alleges that Fremont, along with Magnus and Broker submitted "falsified" information, but the only information specified as being false was his gross monthly income. Moreover, Reyes did not allege how <u>Fremont</u> affirmatively hid the allegedly falsified information from Reyes, nor did he allege his own exercise of due diligence to discover that this false information had been submitted "to the lender's underwriters."

In his opposition to Fremont's motion for summary judgment, Reyes asserted that he was rushed through the signing of all closing documents in order to conceal the fraud in the application and that he was unaware that Broker submitted falsified documents, including fictionalized business and bank accounts, with his loan application. Of these additional allegations, neither are attributed directly to Fremont.[11] Therefore Reyes has failed to assert, at any time, that Fremont affirmatively concealed the nature of the UDAP violations.

---

[11] Relying on two unpublished federal court cases, Reyes argues, contrary to <u>Rundgren</u>, that it does not matter who committed the fraudulent concealment because the purpose of equitable tolling is to extend a statutory limitation period for those who were defrauded and unaware that they had a cause of action. <u>Long v. Deutsche Bank Nat'l Trust Co.</u>, 2011 WL 2650219 (D. Hawaiʻi Jul. 5, 2011) and <u>Skaggs v. HSBC Bank USA, N.A.</u>, 2011 WL 3861373 (D. Hawaiʻi Aug. 31, 2011). However, the United States District Court for the District of Hawaiʻi (District Court) did not, in either case, consider the issue of equitable tolling for fraudulent concealment, but whether the plaintiff had sufficiently alleged a claim for fraudulent misrepresentation. <u>Long</u>, 2011 WL 2650219 at *6, <u>Skaggs</u>, 2011 WL 3861373 at *6.

Furthermore, in <u>Long</u>, although the District Court granted Long leave to amend the fraud claim citing the possibility that a claim might be made out against the mortgage broker, it dismissed the claim against both the originator-lender of the loan and the assignee of the note, implying no good claim could be made against either financial institution based on the fraudulent actions of the broker. <u>Long</u>, at *8-9. Although the District Court denied the lender's motion for summary judgment in <u>Skaggs</u>, it did so based on its finding of genuine issues of material fact based on sufficient allegations in the complaint. <u>Skaggs</u>, 2011 WL 3861373 at *8. Neither case supports the notion that an insufficiently pleaded claim can survive summary judgment let alone serve as a basis for tolling.

Finally, Reyes did not plead, nor did he argue in opposition to Fremont's motion for summary judgment, that he exercised due diligence to discover the concealed UDAP violations. Although Reyes claimed that he was not given time to review the loan documents at signing, he did not claim, let alone present evidence that he never received a copy of his loan application, which would have revealed, upon examination, the gross monthly income that he claims was vastly overstated. Without any evidence of due diligence, Reyes failed to establish a genuine issue of material fact regarding the tolling of the statute of limitations on his UDAP claim in Count Three.

The Circuit Court did not err when it granted summary judgment on Reyes's UDAP claim.

(3) The Circuit Court did not err in granting summary judgment as to Count Six. Count Six of Reyes's FAC asserted that the acts complained of "were done in a willful, wanton, intentional, and/or reckless manner . . . for which Reyes is entitled to an award of punitive and exemplary damages[.]" However, Reyes does not present any argument explaining how the Circuit Court erred in granting summary judgment in Fremont's favor on this count. Therefore, we deem this argument waived. HRAP Rule 28(b)(7).

(C) Reyes argues that the Circuit Court erred when it denied his motion to reconsider the grant of summary judgment to Fremont.

> "[T]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion." Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawai‘i 97, 110, 58 P.3d 608, 621 (2002) (quoting Sousaris v. Miller, 92 Hawai‘i 505, 513, 993 P.2d 539, 547 (2000)). The appellate court reviews a "trial court's ruling on a motion for reconsideration . . . under the abuse of discretion standard." Ass'n of Apartment Owners of Wailea Elua, 100 Hawai‘i at 110, 58 P.3d at 621. An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or

13

disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

Reyes has failed to show the Circuit Court abused its discretion in denying his motion for reconsideration. He fails to argue what new evidence or argument, that could not have been presented in opposing Fremont's motion for summary judgment, was raised in his motion to reconsider. Rather, he argues that the Circuit Court abused its discretion when it denied his motion for reconsideration made on the basis of constructive fraud. However, Reyes's memorandum in support of his motion does not discuss constructive fraud.

Reyes's last point of error is without merit.

Therefore, we affirm the

(1) "Order Denying Plaintiff [Reyes's] Motion to Set Aside the Court's (1) Order Granting Defendants HSBC Bank USA, [National Association,] as Trustee for Home Equity Loan Trust Series ACE-2006-HE1 and Mortgage Electronic Registration Systems, Inc.'s Motion for Summary Judgment, and (2) Final Judgment as to All Claims Against Defendants HSBC Bank USA, National Association, As Trustee for Home Equity Loan Trust Series ACE-2006-HE1 and Mortgage Electronic Registration Systems, Inc." filed May 1, 2012;

(2) "Order Denying Plaintiff [Reyes's] Motion to Reconsider the Court's (1) Order Granting Defendant Fremont Reorganizing Corporation's Motion for Summary Judgment, and (2) Judgment as to All Claims Against Defendant Fremont Reorganizing Corporation," filed April 26, 2012;

(3) "Order Granting Defendant Fremont Reorganizing Corporation's Motion for Summary Judgment Filed January 13, 2012," filed March 1, 2012;

(4) "Order Granting Defendant Fremont Reorganizing Corporation's Motion for Rule 54(b) Certification Filed March 9, 2012," filed April 26, 2012; and

(5) "Final Judgment as to All Claims Against Defendant Fremont Reorganizing Corporation," filed April 26, 2012.

DATED:  Honolulu, Hawai'i, May 29, 2015.

On the briefs:

Gary Victor Dubin,
Frederick J. Arensmeyer, and
Andrew Goff,
for Plaintiff-Appellant.

Presiding Judge

Carol A. Eblen,
Lindalee K. Farm, and
Audrey M. Yap,
(Goodsill Anderson Quinn &
Stifel)
for Defendants-Appellees
HSBC Bank USA, National
Association, as Trustee for
Home Equity Loan Trust Series
ACE 2006-HE1, a Delaware
Corporation and Mortgage
Electronic Registration
Systems, a Delaware
Corporation.

Associate Judge

Associate Judge

Adelbert Green
(Dwyer Schraff Meyer Grant &
Green)[12]
for Defendant-Appellee SGGH
LLC.

---

[12]    Adelbert Green joined Case Lombardi & Pettit in January 2014.

15